## The Lehigh Valley Railroad Company

*v.*

## The Orange Water Company.

1. Public grants are to be strictly construed. The grantee can take nothing except what his grant plainly gives.

2. Where a right to cross or occupy a highway is granted by implication, the corporation can only occupy so much as may be reasonably necessary; and what is reasonably necessary, in case of dispute, must be settled by the courts.

3. The twelfth section of the charter of the Morris Canal Company gives them a right to cross public highways wherever it is necessary that they should do so, but they must exercise this right in such a manner as to cause the least possible inconvenience to the public.

4. Under the right to cross, the canal company do not take the fee of the land covered by the highway where their canal crosses, but simply a right of way; and so long as they are left in the free and unobstructed use and enjoyment of that, though the highway may be appropriated to other purposes than travel, they suffer no wrong, and have no cause of complaint.

5. Where two highways meet, neither is entitled to destroy the other, but each must yield what is essential to the existence of the other.

On final hearing on bill and answer and proofs taken before a master.

*Mr. Thomas N. McCarter,* for complainants.

*Mr. Joseph L. Munn* and *Mr. Henry C. Pitney,* for defendants.

Van Fleet, V. C.

The defendants, by their charter, are empowered to procure and supply water " for the use of the people of Orange and its vicinity, in the county of Essex," and to this end they are given authority to lay pipes and other conduits in the public highways, and to place hydrants and fire-plugs therein free of charge. *P. L. of 1865 p. 938 § 6.* On the 1st of August, 1883, the defendants made a contract with the township of Bloomfield, in the county of Essex, to supply water to that township for both public and

private use.  Authority to make such a contract was conferred by a statute passed in 1881, which enacts that it shall be lawful for the governing body of any municipal corporation in the state, to make a contract for water for the extinguishment of fires and for such other public uses and purposes as may be found necessary or convenient.  *P. L. of 1881 p. 118.*  The validity of this statute and also of the contract made by the defendants under its authority, have already, as between a tax-payer and the township, been the subject of judicial consideration, and both have been pronounced valid.  *Van Giesen* v. *Bloomfield, 18 Vr. 442.*  It is also authoritatively settled in this state that a corporation created to supply the inhabitants of a town with water for their private use, and which is charged with the duty of supplying water on reasonable terms to all who may apply, so manifestly subserves the public welfare that it is competent for the legislature to authorize such a corporation to exercise the right of eminent domain.  *Olmsted* v. *Morris Aqueduct, 17 Vr. 495; S. C. on error, 18 Vr. 311; Van Giesen* v. *Bloomfield, supra.*

One of the provisions of their contract made it the duty of the defendants to lay pipes in such of the streets of the township of Bloomfield as the town committee should designate.  Among the streets so designated was Bloomfield avenue.  This is an ancient highway, having been used as a public road long prior to the construction of the Morris canal.  It was formerly called the Newtown road.  The canal crosses it.  The canal, at the point where it intersects the avenue, is constructed in a cut, and the avenue is carried over the canal by a bridge about twelve feet in width, and standing above the water of the canal between nine and ten feet.  The defendants have carried their pipe across the canal by means of a bridge built within the lines of the avenue.  Stone piers were erected within the lines of the avenue, on both sides of the canal, but not on lands belonging to the canal company, and on these piers timbers were laid, and the pipe carried across on these timbers.  The bridge was built and the pipe carried across in November, 1884.  The complainants are lessees of the Morris Canal and Banking Company, and by virtue of a lease executed in May, 1871, under legislative au-

thority, are in possession of all the franchises, property and rights of the canal company. The defendants erected their bridge and carried their pipe across the canal without the consent of the complainants and against their protest. This suit is brought to procure or compel the removal of such part of the bridge as spans or overhangs the canal.

The important question which the case presents, it will be seen, is whether the defendants, in erecting the bridge across the canal and laying their pipe on it, committed such an invasion of the complainants' rights as entitles them to the aid of a court of equity. It is not pretended that the bridge, at present, does the complainants any injury whatever. The bill admits that it stands a little higher above the water of the canal than the highway bridge erected by the canal company at the same place, so that it is entirely clear; that while the highway bridge remains at its present elevation, the defendant's bridge will not impair or obstruct, to the slightest extent, the full and free use of the canal for the purposes for which it was constructed. It is also true that it is an undisputed fact in the case that twenty of the twenty-five bridges crossing the canal between the avenue in question and the tracks of the Pennsylvania railroad in the city of Newark (some of which constitute a part of the streets of the city of Newark which are more extensively used than any others, and others constitute a part of the road-beds of railroads) stand either lower than the defendants' bridge, or at about the same elevation. But five of them stand higher. So that it would seem to be almost absolutely certain, in view of the character and importance of the rights involved, that no material change will be made in the elevation of the bridges, on this section of the canal, during the next fifty years. Indeed, the probabilities are very strongly against any material change being made at any time in the future. Unless, therefore, the complainants, or their lessors, own the *locus in quo* in fee, or have some higher or stronger right than a simple right of way or easement over the land in question, it would seem to be perfectly clear that, inasmuch as what the defendants have done does not, even in the slightest degree, obstruct the complainants

in the full and free exercise of all their rights, no wrong has been done or injury sustained, and consequently that no judicial redress can be given.

The charter of the canal company was granted in 1824. It invests them with extraordinary powers, such as, since the adoption of the constitution of 1844, the legislature are prohibited from granting to either individuals or private corporations. They are authorized to take private property without first making compensation. Entry by them upon private property, and the appropriation of it to their purposes without first making compensation, is not a trespass, nor will ejectment lie against them for its recovery. Their power, to this extent, stands supported by a uniform course of decision. *Kough* v. *Darcey, 6 Hal. 237; Den* v. *Morris Canal Co., 4 Zab. 587; Lehigh Valley R. R. Co.* v. *McFarlan, 4 Stew. Eq. 706; S. C., 14 Vr. 605.* But no such power has been given to them over public property or public rights. They can take nothing belonging to the public except what their grant plainly gives. The principle is fundamental, and universally recognized, that public grants are to be strictly construed. The grantee can take nothing except what his grant plainly gives. Any ambiguity in its terms will be fatal to his claim. To doubt in such a case is to deny. *Pennsylvania R. R. Co.* v. *National Railway Co., 8 C. E. Gr. 441.* Public highways ought not to be destroyed, even in part, under pretence of legislative authority, unless it be conferred either in express terms or by necessary implication. If the words are ambiguous, the construction ought to be in favor of the common right of highway, not against it. *Warren R. R. Co.* ads. *State, 5 Dutch. 353.* The canal company had an undoubted right to construct their canal across the public highways running across the route of their canal. Such a right would exist by implication, even if their charter said nothing upon the subject, for it is a fact, which must be understood without mention, that it would be impossible to construct a canal from Easton to Newark without crossing many highways, and therefore a grant to construct a canal between these two points would necessarily confer, by unavoidable implication, a right to cross the highways lying across the

route of the canal. Where a right to cross or occupy a public highway is granted by implication, the corporation can occupy only so much of the public easement as may be reasonably necessary to enable them to accomplish the purposes for which they were created. Beyond this they cannot go, and the question as to the extent of their grant in this respect, or how far a reasonable necessity will allow them to occupy, is a matter which the corporation cannot determine for themselves, but must, in case of dispute, be determined by the courts. *Newark and New York R. R. Co.* v. *Newark, 8 C. E. Gr. 515; Greenwich* v. *E. & A. R. R. Co., 9 C. E. Gr. 217; S. C. on appeal, 10 C. E. Gr. 565; N. J. Southern R. R. Co.* v. *Long Branch Commissioners, 10 Vr. 28.* Where, however, the charter contains a provision defining the powers and duties of the corporation in this regard, that must, of course, be taken as the standard of their rights and obligations.

The twelfth section of the charter of the canal company declares that when the canal shall cross any public road it shall be the duty of the company, at their own proper expense, to make good and sufficient bridges across the canal and to keep the same in repair, so as to prevent any inconvenience in the usage of the road by reason of the canal crossing the same. *P. L. of 1824 p. 165.* The legislative purpose in making this enactment is, I think, entirely clear. They meant to give the canal company a right to cross highways, wherever it might be necessary that they should do so, to accomplish the purposes for which they were created, but they also meant that they should exercise this right in such manner as to cause the least possible injury and inconvenience to the public. They were to take what it was reasonably necessary for them to have, and no more, and to this extent, and to this extent only, the public were to yield their rights. This section has been the subject of judicial consideration. Chief-Justice Green, in *Morris Canal* v. *State, 4 Zab. 62, 67,* said that the design of this section was to prevent the canal company from committing a nuisance, and that the legislature intended that the highways, where the canal crossed them, should, so far as possible, be left just in the condition the canal company

14

found them. Mr. Justice Elmer, in the same case, intimated that where a public highway is carried across the canal by a bridge so built as not to materially interfere with the appropriate use of the canal it might well be considered that in such a case there was not such a taking of canal property as required compensation to be made. And Chancellor Williamson subsequently declared, in *Morris and Essex R. R. Co.* v. *Newark, 2 Stock. 352,* that where a railroad corporation are authorized to construct their road across a highway, that what the corporation appropriate in crossing is not any right or title of the owner of the fee of the land over which the highway passes, but only the public easement, and for that reason there is, in such a case, no such taking of private property as entitles the owner of the fee to compensation. " The authority," said the chancellor, " to use a public highway for the purpose of a railroad, retaining the use of such highway for all ordinary purposes, subject only to the inconvenience of the railroad, is not such a taking of private property from the owner of the fee as is contemplated " by the constitutional provision, which forbids the taking of private property for the use of a private corporation without first making compensation. If these views are correct, it would seem to be indisputable that the only right or interest which it was possible for the canal company to acquire in the *locus in quo* was a right of way ; in other words, a right to take and appropriate so much of the public easement as should be necessary for their purposes. If this is so, it is manifest that so long as nothing is done which prevents the canal company from having the full, free and unobstructed use and enjoyment of such right of way, they suffer no injury whatever and have no right to redress.

But there is another adjudication much more directly in point, and which this court is bound to recognize as a conclusive authority on the question now before it. The case referred to is the *Morris Canal* v. *Jersey City, 1 Beas. 252 ; S. C., on appeal, Id. 547.* In this case it appeared that a street, called Hudson street, had been dedicated in 1804. As laid down on the map, by which the dedication was in part effected, the street extended from the fast land in Jersey City to the waters of the New York

bay. The most of the street was located on land below low-water mark. About 1835, when the canal company extended their canal from Newark to the waters of the Hudson river, at Jersey City, they constructed a basin across this street, filled in the land, and built an extensive coal wharf partly within the lines of this street. They also built a pier, as a means of approach to the basin, within the lines of this street. The canal company, in 1835, acquired, by deed, the title of the person who made the dedication. The city authorities did nothing evincing a purpose to accept that part of this street which extended below low-water mark, until 1854, and until after the canal company had completed their basin and changed the natural condition of the land covered by this street in the manner above described. They then notified the canal company to remove the buildings and other obstructions which they had placed in the street, and they also took the necessary corporate action to open the street, to the basin, over the pier which the canal company had erected. This court, at the suit of the canal company, enjoined further action by the city authorities, and, on the final hearing of the cause, the injunction was made perpetual. The judgment of this court was placed mainly on the ground that a riparian owner had no such estate in, or right or power to make an effectual dedication of it. On appeal, the decree of this court was reversed, the court of errors and appeals holding that a riparian owner may, with the assent of the state, make a valid dedication of land under water for the purposes of a highway, and that the city authorities had a right to extend Hudson street over the pier of the canal company to the canal basin. The relative rights of the public and the canal company were defined as follows: Where two public highways meet, as in this case, neither is entitled to destroy the other; each must, in some degree, yield to the other what would be their strict legal rights, if they did not meet and collide. The public are entitled to the use of the place in question, as a public street, and the canal company are also entitled to the use of it as the side of their basin. The city corporation may not, under color of the right to regulate and control streets, do any act destructive of the basin, or prevent the use of it as a

canal basin for the legitimate purposes of canal navigation, and the canal company have no right to exclude the public, and occupy it as a coal yard, or as a place for permanent storage. It is a public street, but a public street over a canal pier, to be used by the canal company for all necessary purposes not inconsistent with the right of the public in it as a street.

The important principle established by this adjudication is, that where the rights of the canal company come in conflict with the rights of the public in a highway, the public will be required to yield their rights to such an extent only as may be reasonably necessary to enable the canal company to accomplish the purposes for which it was created. Applying that principle to this case, it is clear that no relief can be given to the complainants. Whether the use the defendants have made of Bloomfield avenue is lawful nor not, as against the public, is a question which cannot be decided in this case. The question here is whether or not the defendants have invaded the rights of the complainants, or committed any acts which as against them, are wrongful, and which have resulted in legal injury. On that question I entertain no doubt.

The question whether the defendants have a right to carry their pipe across the complainants' right of way, by constructing a tunnel under the bed of the canal, is not before the court, and it would not, therefore, be proper that any opinion on that question should be expressed, but it is obvious, I think, that that method of crossing differs so essentially, in many important respects, from the one adopted by the defendants, that it should not be assumed because the one adopted is sanctioned that the other will be.

The complainants' bill must be dismissed, with costs.